**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
pelton@peltongraham.com
Taylor B. Graham (TG 9607)
graham@peltongraham.com
Alison Mangiatordi (AL 1020)
mangiatordi@peltongraham.com
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ALEXANDER SIGUENZA TORRES,** Individually and On Behalf of All Others Similarly Situated, <br><br>        **Plaintiffs,** <br><br> -against- <br><br> **DJ SOUTHHOLD, INC. d/b/a DUNKIN' DOUNTS, SANJAY JAIN, NEERJA JAIN, and SHASHANK JARETH,** Jointly and Severally, <br><br>        **Defendants.** | **COLLECTIVE ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

   Plaintiff Alexander Siguenza Torres ("Siguenza" or "Plaintiff"), individually and on behalf of all others similarly situated, as collective action representative, upon personal knowledge as to himself and upon information and belief and the investigation of his counsel as to other matters, alleges as follows:

## INTRODUCTION

1. Plaintiff worked as an associate, assistant manager and store manager for Defendants' Dunkin' Donuts restaurant located in Southold, New York. While working for Defendants, Plaintiff was required to work well in excess of forty (40) hours each week and was paid at straight-time rates for all hours worked, including overtime hours, pursuant to Defendants' unlawful corporate pay scheme. As such, Plaintiff was not paid overtime premiums for hours worked over forty (40) in a given workweek, in violation of federal and state law.

2. Plaintiff brings this action to recover unpaid overtime premium pay owed to him pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq*. Plaintiff also brings claims for unpaid spread-of-hours premiums, and for failure to provide proper wage notices and wage statements, pursuant to NYLL §§ 190 *et seq*. and the supporting regulations.

3. Plaintiff brings the above FLSA claims on behalf of himself and all other similarly situated employees of Defendants and his NYLL claims on behalf of himself and all opt-in plaintiffs.

4. Plaintiff was terminated the day that Defendants became aware that he signed a declaration in support of the Plaintiffs' claims in a related matter entitled *Sheraz Khalid, et al. v. DJ Shirley 1, Inc., et al.* 15 Civ. 5926 (LDW) (GRB) (the "Khalid Action"). As such, Plaintiff brings individual claims for retaliation under FLSA, 29 U.S.C. § 215(a)(3) and NYLL § 215.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiff's claims under the

FLSA pursuant to 29 U.S.C. § 216(b).

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' business is located in this district.

7. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiff:**

8. Plaintiff has been, at all relevant times, an adult individual residing in Suffolk County, New York.

9. Throughout the relevant time period, Plaintiff performed work for Defendants at their Dunkin' Donuts restaurant located at 3345 Rte. 25 Unit #1, Southold, NY 11971.

10. Plaintiff consents in writing to be parties to this action, pursuant to 29 U.S.C. § 216(b), and his consent form is attached hereto.

**Defendants:**

11. Upon information and belief, DJ SOUTHHOLD INC. ("DJ SOUTHHOLD" or "Corporate Defendant") was, at all relevant times, an active New York Corporation doing business as "Dunkin' Donuts," with its principal place of business in Southold, Suffolk County, New York.

12. Upon information and belief, Defendants Sanjay Jain ("S. Jain") and Neerja Jain ("N. Jain") are each an owner and operator of the Corporate Defendant.

13. Upon information and belief, Defendant Shashank Jareth ("Jareth" and, together with S. Jain and N. Jain, "Individual Defendants" and, together with Corporate Defendant, "Defendants") has been an operations manager for DJ Southold Inc. and Defendants S. Jain and

N. Jain's other Dunkin' Donuts stores in Queens and Long Island.

14. According to the corporate filings with the New York State Department of State Division of Corporations, Defendant N. Jain is listed as DJ SOUTHHOLD's chief executive officer, the contact person for the DOS Process and for the principal executive office.

15. Upon information and belief, the Individual Defendants set the Corporate Defendant's payroll policies, including the unlawful practices complained of herein.

16. The Individual Defendants participated in the day-to-day operations of the Corporate Defendant and acted intentionally in their direction and control of Plaintiff and are "employers" pursuant to the FLSA, 29 U.S.C. § 203(d), 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and are jointly and severally liable with the Corporate Defendant.

17. At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). At all relevant times, Defendants employed, and/or continue to employ, Plaintiff within the meaning of the FLSA.

18. At all relevant times, Plaintiff was employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

19. Upon information and belief, at all relevant times, the Corporate Defendant has had gross revenues in excess of $500,000.00.

## COLLECTIVE ACTION ALLEGATIONS

20. Pursuant to 29 U.S.C. §§ 207 and 216(b), Plaintiff brings his First Cause of Action as a collective action under the FLSA on behalf of himself and the following collective:

> All persons employed by Defendants at any time since August 30, 2014, and through the entry of judgment in this case (the

4

"Collective Action Period") who were paid on an hourly basis (the "Collective Action Members").

21. A collective action is appropriate in this circumstance because Plaintiff and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policy of failing to pay overtime premiums for work performed in excess of forty (40) hours each week. As a result of this policy, Plaintiff and the Collective Action Members did not receive the legally-required overtime premium payments for all hours worked in excess of forty (40) hours per week.

22. Plaintiff and the Collective Action Members have substantially similar job duties, and are paid pursuant to a similar, if not the same, payment structure.

## STATEMENT OF FACTS

**Defendants' Business Enterprise**

23. At all relevant times, Defendants have been in the fast-food franchise business.

24. Upon information and belief, the S. Jain and N. Jain are the sole owners and operators of Corporate Defendant and several other Dunkin' Donuts franchise restaurants throughout Long Island and Queens, New York.

25. Upon information and belief, Defendants maintain a corporate headquarters at their Dunkin' Donuts location at 440 William Floyd Parkway, Shirley, NY 11967, whereby they handle the payroll processing and operations for the Corporate Defendant and their other Dunkin' Donuts restaurant locations.

26. In addition to DJ SOUTHHOLD, Defendants own the following corporate entities through which they operate the other restaurant locations in the DJ Dunkin' Donuts Enterprise:

> DJ SHIRLEY 1, INC.
> DJ HOLBROOK, INC.
> DJ SHIRLEY 1 NATHANS INC.
> DJ SHIRLEY 2 INC.

5

>DJ RIVERHEAD INC.
>DJ RIVERHEAD 2 INC.
>DJ RIVERHEAD 3 INC.
>DJ JAMESPORT INC.
>DJ HAMPTON BAYS INC.
>DJ BRIDGEHAMPTON INCORPORATED
>DJ EASTPORT INC.
>DJ SOUTHHAMPTON INC.
>DJ WESTHAMPTON INC.
>DJ LAKEGROVE INC.
>DJ CENTEREACH INC.
>DJ 112 INC.
>DJ MAIN STREET INC.
>DJ MEDFORD LLC
>DJ RONKONKOMA LLC

27. Upon information and belief, all of the corporate filings for the corporate entities listed in the foregoing paragraph list 440 William Floyd Parkway, Shirley, NY 11967 as their principal executive office and either Defendant S. Jain or N. Jain as their chief executive officer.

**Plaintiff's Work for Defendants**

28. Plaintiff Siguenza was employed by Defendants at their Southold store as an associate, assistant manager and store manager from in or around October 2013 through in or around the end of June 2017 ("Siguenza Employment Period").

29. Throughout the Siguenza Employment Period, Siguenza regularly reported to Individual Defendants

30. Throughout the Siguenza Employment Period, Plaintiff typically worked seven (7) days per week from approximately 5:00 am until approximately 4:00 or 4:30 pm or sometimes later for a total of approximately seventy (70) to seventy-five (75) hours per week.

31. Throughout the Siguenza Employment Period, Siguenza was paid with a bi-weekly paycheck delivered on Fridays that was accompanied by a paystub. From the start of the Siguenza Employment Period until in or around February of 2016, Plaintiff's pay stubs and

paychecks were inaccurate and showed approximately twenty fewer hours than he worked. While his pay stubs indicated that he was paid overtime premiums for a certain number of hours, the pay stubs showed significantly fewer hours than he actually worked such that he received straight-time pay for his work.

32. Although prior to February of 2016, Siguenza typically received a paystub with his paycheck each pay period, his paystubs did not reflect the correct number of hours that he worked each pay period.

33. Although Siguenza typically worked well in excess of forty (40) hours per week, prior to February 2016, he never received overtime premium pay for the hours he worked in excess of forty (40) hours in a given week.

34. Siguenza is aware that Defendants did not pay their other employees overtime premium pay for hours worked in excess of forty (40) hours in a given week prior to in or around February 2016.

35. Defendants failure to pay Plaintiff and similarly situated individuals overtime premium pay was a corporate policy of Defendants, which applied to all of their employees prior to in or around February 2016.

36. In or around February 2016, Defendants started paying overtime wages to Siguenza.

37. From the start of the Siguenza Employment Period until in or around December 31, 2013, Defendants paid Siguenza $7.75 per hour for all hours worked, even hours worked in excess of forty (40) hours in a week.

38. From in or around January 1, 2014 to in or around June 2014, Defendants paid Siguenza $9.75 per hour for all hours worked, even hours worked in excess of forty (40) hours in

7

a week.

39. From in or around June 2014 to in or around January 2016 Defendants paid Siguenza $10.00 per hour for all hours worked, even hours worked in excess of forty (40) hours in a week.

40. From in or around February 2016, when Siguenza was promoted to store manager, until in or around early 2017, Defendants continued to pay Siguenza $10.00 per hour, however, they then began paying overtime at time and a half for hours worked in excess of forty (40) in a week. During this time, Siguenza was still working from in or around seventy to seventy-five (70-75) hours per week, and was receiving in excess of one thousand seven hundred dollars ($1,700) per week for his work.

41. From in or around early 2017 and throughout the remainder of the Siguenza Employment Period, in order to save money, Defendants began paying Siguenza a "salary" of one thousand seven hundred dollars ($1,700) per week for his work.

42. During this time, Siguenza was still required to work seventy (70) or more hours, however, he was required to sign and submit documents which inaccurately reflected that he worked only sixty (60) hours per week. Moreover, Siguenza was required to sign a wage notice that he worked only sixty (60) hours per week.

43. During the time when Siguenza was being paid a salary, he was required to send two (2) copies of his payroll worksheets. The first would inaccurately show that Plaintiff worked a total of sixty (60) hours in a week. The second would show the actual number of hours that Siguenza worked, which was typically approximately seventy (70) hours or more per week.

44. When Siguenza was paid hourly until in or around early 2017 when he began receiving a salary, he was required to clock in and clock out. In or around early 2017 when

Siguenza began receiving a salary, he was no longer required to clock in and clock out of the computer timekeeping system, however, he was required to call his operations manager Jareth to confirm from the store phone that the store was open. Furthermore, Siguenza was required to write on the weekly schedule the time that he arrived and the time that he departed each day so that Defendants could ensure that Siguenza was working his required weekly hours of seventy (70) hours or more.

45. Despite the fact that Plaintiff and similarly situated employees typically worked shifts of ten (10) or more hours per day, he was not paid spread-of-hours premium pay equal to an hour of minimum wage for each day that they worked such shifts.

46. Prior to on or about May 29, 2017, Plaintiff never received a wage notice showing their hourly or overtime rate at the date of their hiring or by February 1 of each year. On or about May 29, 2017, Plaintiff was required to sign a blank and undated document entitled "Employee Hiring and Payrate Sheet" ("EHP Sheet").

47. Plaintiff is aware, based on his role as a manager and from speaking with Defendants' other employees, that Defendants' similarly situated employees never received wage notices showing their hourly or overtime rates on the date of their hiring or on February 1 of each year thereafter.

48. On or about May 15, 2017, Defendants' operations director, Jareth, visited Plaintiff at the Southold store and handed him an affidavit, which he asked Plaintiff to sign. The Affidavit is false and untruthful. As such, Plaintiff refused to sign it.

49. After Plaintiff refused to sign the Affidavit, S. Jain called Plaintiff and asked why he would not sign it, saying "you work for us," "you are happy" and "everyone else was signing." Moreover, Defendants seemed to push Plaintiff to sign, seemingly threatening his

9

ongoing employment with Dunkin' Donuts.

50. On or about May 19, 2017, Assif Shazad ("Shazad"), another of Defendants' operations managers, visited Plaintiff at the Southold store with a stack of declarations. Shazad asked Plaintiff for his help obtaining signatures on these declarations from former employees. On the back of the declarations were EHP Sheets. Shazad asked Plaintiff to also have former employees sign these blank, undated documents, and that the office would fill in the rest.

51. On or about May 19, 2017, N. Jain called Plaintiff at the Southold store to reiterate Shazad's request that Plaintiff gather signatures from prior employees on the declarations and EHP Sheets.

52. On or about June 3, 2017, Plaintiff signed a declaration stating the truth about Defendants' practices. At this time, Plaintiff was fearful for his job and his physical security for speaking truthfully regarding Defendants' payroll practices and for refusing to assist them to gather signatures on false declarations and on blank, undated EHP Sheets from former employees.

53. On June 22, 2017, in connection with Khalid action, Plaintiff's attorneys filed Plaintiff Siguenza's declaration in support of the Plaintiffs' claims in the Khalid action. The following day, June 23, 2017, in or around 2:30 pm, Defendants fired Siguenza.

54. On June 23, 2017, Defendants sent Shahzad to tell Siguenza that "today is your last day."

### FIRST CAUSE OF ACTION
### FAIR LABOR STANDARDS ACT – UNPAID OVERTIME
### (Brought on Behalf of Plaintiff and the Collective Action Members)

55. Plaintiff, on behalf of himself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

56. By failing to pay overtime at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

57. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

58. Defendants' failure to pay overtime caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiff and the Collective Action Members are entitled to recover from Defendants his unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNLAWFUL RETALIATION
### (Brought on Behalf of Plaintiff Siguenza)

59. Plaintiff Siguenza repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

60. Plaintiff Siguenza attempted to enforce his rights pursuant to the FLSA by signing a declaration which supports Plaintiffs' claims in the instant lawsuit.

61. Plaintiff's actions were protected activity under the FLSA.

62. Defendants retaliated against Plaintiff Siguenza after they became aware that Plaintiff Siguenza had signed a declaration in support of the Khalid Action by terminating his

11

employment with Defendants. Such actions are sufficient to dissuade any reasonable employee from enforcing his or her rights under the FLSA.

63. By engaging in the retaliatory acts alleged herein, Defendants retaliated against Siguenza, discriminated against him, and penalized him in violation of the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3).

64. Siguenza has suffered damages, including but not limited to loss of wages, punitive damages and interest.

65. Siguenza is entitled to monetary relief including but not limited to compensatory and other damages, reasonable attorneys' fees and costs, punitive damages, and other appropriate relief.

### THIRD CAUSE OF ACTION
### NEW YORK LABOR LAW – UNPAID OVERTIME
### (Brought on Behalf of Plaintiff and the Opt-in Plaintiffs)

66. Plaintiff, on behalf of himself and the Opt-in Plaintiffs, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

67. Defendants willfully violated Plaintiff and the Opt-in Plaintiffs' rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of forty (40) each week, in violation of the NYLL and regulations promulgated thereunder.

68. Defendants' failure to pay overtime premium compensation caused Plaintiff and the Opt-in Plaintiffs to suffer loss of wages and interest thereon. Plaintiff and the Opt-in Plaintiffs are entitled to recover from Defendants their unpaid overtime compensation, damages

for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

### FOURTH CAUSE OF ACTION
### NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS PREMIUMS
### (Brought on Behalf of Plaintiff and the Opt-in Plaintiffs)

69. Plaintiff, on behalf of himself and the Opt-in Plaintiffs, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

70. Defendants willfully violated Plaintiff and the Opt-in Plaintiff's rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where Plaintiff worked either a split shift or more than ten (10) hours per day, in violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

71. Defendants' failure to pay spread-of-hours compensation caused Plaintiff and the Opt-in Plaintiffs to suffer loss of wages and interest thereon. Plaintiff and the Opt-in Plaintiffs are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

### FIFTH CAUSE OF ACTION
### NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICE
### (Brought on Behalf of Plaintiff and the Opt-in Plaintiffs)

65. Plaintiff, on behalf of himself and the Opt-in Plaintiffs, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

66. Defendants have willfully failed to supply Plaintiff and the Opt-in Plaintiffs notice as required by Article 6, § 195, in English or in the language identified by Plaintiff and the Opt-in Plaintiffs as their primary language, containing Plaintiff and the Opt-in Plaintiff's rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable; the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

67. Due to Defendants' violations of the NYLL, Plaintiff and the Opt-in Plaintiffs are entitled to recover from Defendants fifty dollars ($50) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## SIXTH CAUSE OF ACTION
## NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENT
### (Brought on Behalf of Plaintiff and the Opt-in Plaintiffs)

68. Plaintiff, on behalf of himself and the Opt-in Plaintiffs, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

69. Defendants have willfully failed to supply Plaintiff and the Opt-in Plaintiffs with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of

work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

70. Due to Defendants' violations of the NYLL, Plaintiff and the Opt-in Plaintiffs are entitled to recover from Defendants one hundred dollars ($100) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## SEVENTH CAUSE OF ACTION
## NEW YORK LABOR LAW – UNLAWFUL RETALIATION
## (Brought on Behalf of Plaintiff Siguenza)

72. Plaintiff Siguenza repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

73. Plaintiff Siguenza attempted to enforce his rights pursuant to the NYLL by signing a declaration which supports Plaintiffs' claims in the instant lawsuit.

74. Siguenza's actions were protected activity under NYLL § 215.

75. Defendants retaliated against Plaintiff Siguenza after they became aware that Plaintiff Siguenza had signed a declaration by terminating his employment. Such actions are sufficient to dissuade any reasonable employee from enforcing his or her rights under the NYLL.

76. Notice of this claim has been served upon the Attorney General pursuant to NYLL § 215(2).

15

77. Siguenza has suffered damages, including but not limited to loss of wages, punitive damages and interest.

78. Siguenza is entitled to monetary relief including but not limited to compensatory and other damages, reasonable attorneys' fees and costs, punitive damages, and other appropriate relief.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, on behalf of himself and all other similarly situated Collective Action Members, respectfully requests that this Court grant the following relief:

a. Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

c. An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

d. An award of compensatory damages as a result of Defendants' failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

e. An award of compensatory damages as a result of Defendants' failure to pay spread-of-hours premiums pursuant to the NYLL and supporting regulations;

f. An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g. Fifty dollars ($50) per Plaintiff and Opt-in Plaintiff for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per Plaintiff and Opt-in Plaintiff as provided for by NYLL, Article 6 § 198(1)-b;

h. Two hundred fifty dollars ($250) per Plaintiff and Opt-in Plaintiff for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per Plaintiff and Opt-in Plaintiff as provided for by NYLL, Article 6 § 198(1)-d;

i. An award of compensatory damages for the economic damages and emotional distress, pain, and suffering caused by retaliation;

j. An award of punitive damages under the FLSA for retaliation;

k. An award of punitive damages under the NYLL for retaliation;

l. An award of prejudgment and post-judgment interest;

m. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
August 30, 2017

                PELTON GRAHAM LLC

By: _/s/_____
Brent E. Pelton
Taylor B. Graham
Alison L. Mangiatordi
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiff and the putative collective*

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Dunkin' Donuts, and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me prevailing wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____  \_\_\_\_ALEXANDER SIGUENCIA\_\_\_\_
Signature                                                               Printed Name