## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SHERAZ KHALID, SURESH PATEL and MOHAMMED SALEH, Individually and on Behalf of All Others Similarly Situated,** | **FILED**<br>**CLERK** |
| Plaintiffs, | 10:14 am, Jan 04, 2021 |
| -against- | **U.S. DISTRICT COURT**<br>**EASTERN DISTRICT OF NEW YORK**<br>**LONG ISLAND OFFICE** |
| **DJ SHIRLEY 1 INC. d/b/a DUNKIN' DONUTS, DJ HOLBROOK INC. d/b/a DUNKIN' DONUTS, DJ SOUTHHOLD, INC. d/b/a DUNKIN' DOUNTS, SANJAY JAIN, NEERJA JAIN, and JOHN DOE CORPS. #1-13, Jointly and Severally,** | **15 Civ. 5926 (SIL)** |
| Defendants. | |
| **ALEXANDER SIGUENZA TORRES, SN EHA VAGHELA, and KRISHNABA ZALA, Individually and On Behalf of All Others Similarly Situated,** | |
| Plaintiffs, | |
| -against- | **17 Civ. 5123 (SIL)** |
| **DJ SOUTHHOLD, INC. d/b/a DUNKIN' DOUNTS, DJ SOUTHAMPTON, INC. d/b/a DUNKIN' DONUTS, DJ HAMPTON BAYS INC., DJ RIVERHEAD INC., DJ BRIDGEHAMPTON, INC., SANJAY JAIN, NEERJA JAIN, and SHASHANK JARETH, Jointly and Severally,** | |
| Defendants. | |

**[PROPOSED] ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND APPROVAL OF CLASS COUNSEL'S FEES AND COSTS**

The above-captioned matter came before the Court on the parties' Joint Motion for Final Approval of Class Settlement and Approval of Class Counsel's Fees and Costs ("Motion for Final Approval") (Khalid, Dkt. No. 158).

## I.    Background and Procedural History

1.    The parties' proposed settlement resolves all claims in the actions entitled *Khalid, et al. v. DJ Shirley 1, Inc., et al.*, 15 Civ. 5926 (SIL) (the "Khalid Action") and *Torres, et al. v. DJ Southhold, Inc., et al.*, 17 Civ. 5123 (SIL) (the "Torres Action"), both currently pending before this Court (together, the "Federal Actions"), as well as the matters of *DJ Shirley 1, Inc. v. Suresh Patel, et al.*, Index No. 604382/2018  (the "Shirley Action") and *DJ Southhold, Inc. v. Saleh Mohammed, et al.*, Index No. 604381/2018, both currently pending in the Supreme Court of New York, County of Suffolk (the "Southhold Action" and, together with the Shirley Action, the "State Court Actions" and, together with the Federal Actions, the "Actions").

2.    The plaintiffs in the Federal Actions ("Plaintiffs") allege that Defendants in the Federal Actions ("Defendants") violated the New York Labor Law ("NYLL") and Fair Labor Standards Act ("FLSA"), by failing to pay overtime wages, spread-of-hours premiums, provide proper wage notices and wage statements and for retaliation against two (2) of the six (6) plaintiffs named in the Federal Actions (the six (6) plaintiffs named in the Federal Actions will be referred to herein as the "Named Plaintiffs").

3.    The plaintiffs in the State Actions ("State Actions Plaintiffs") brought claims against defendants in the State Actions ("State Action Defendants") under the New York common

law theories of breach of duty of loyalty/faithless servant doctrine, breach of fiduciary duty, conversion, conspiracy to commit conversion, fraud and conspiracy to commit fraud.[1]

**The Khalid Action**

4.      On October 14, 2015, Plaintiff Sheraz Khalid ("Khalid") filed the Khalid Action as a putative class action under Fed. R. Civ. P. 23 and as a collective action under the FLSA. (Khalid Action, Dkt. No. 1 (the "Khalid Complaint")). On March 11, 2016, Plaintiff Khalid, Patel and Mohammed Saleh ("Saleh" and, together with Khalid and Patel, the "Khalid Plaintiffs") filed an amended complaint (the "Khalid Amended Complaint") adding Patel and Saleh as named plaintiffs and adding a retaliation claim for Patel. (Khalid Action, Dkt. No. 19). On April 11, 2016, Defendants filed an Answer to the Khalid Amended Complaint, disputing the material allegations and denying any liability in the proposed class and collective action. (Khalid Action, Dkt. No. 25).

5.      The Hon. Gary R. Brown held an initial conference in the Khalid Action on January 6, 2016. (Khalid Action, Dkt. No. 13).  At this time the Court and the parties set initial discovery deadlines and discussed Plaintiff Khalid's FLSA claim and the anticipated motion for conditional certification of an FLSA collective. (*Id.*).

6.      On March 28, 2016, the parties filed a consent motion for conditional certification of an FLSA collective. (Khalid Action, Dkt. No. 22). On March 29, 2016, the Court granted conditional certification of a collective consisting of all current and former hourly employees who worked for any Dunkin' Donuts or combination Dunkin' Donuts/Baskin Robbins/Nathan's location owned and operated by Sanjay Jain and/or Neerja Jain in Nassau or Suffolk County at any time between October 14, 2012 and March 29, 2016 who worked more than 40 hours in any given workweek, with the exception of store managers. (Khalid Action, Dkt. No. 23). In accordance with

---

[1] The State Action Plaintiffs are certain of the corporate entities named as the Defendants in the Federal Actions, and who have sued the Plaintiffs concerning the Plaintiffs' work for the Defendants.

the Court's Order granting conditional certification, Defendants produced a list of one hundred and eighty-seven (187) members of the FLSA collective. In total, nineteen (19) employees of Defendants opted into the Khalid Action (the "Khalid Action Opt-in Plaintiffs").

7.    On September 13, 2016, the Court granted the parties' motion for extension of time to complete discovery from October 6, 2016 to December 5, 2016. (Khalid Action, Order of the Court dated September 13, 2016).

8.    On December 15, 2016, a settlement conference was held by Hon. Gary R. Brown; however, the matter was not settled at that time. (*See* Khalid Action, Minute Entry December 15, 2016).

9.    On March 24, 2017, Plaintiffs filed their fully briefed motion for Rule 23 class action certification and for partial summary judgment in accordance with the Court's bundling rule. (Khalid Action, Dkt. Nos. 64-79).

10.    On April 24, 2017, the Court so-ordered Defendants' stipulation for substitution of counsel. (Khalid Action, Order of the Court April 24, 2017).

11.    On May 22, 2017, Defendants filed a letter application to the Court alleging newly found evidence relating to Plaintiffs' claim that Defendants failed to provide them with wage notices, as required by NYLL § 195(1). (Khalid Action, Dkt. No. 85). On June 1, 2017, the Court re-opened discovery for the production of the alleged wage notices. (Khalid Action, Order of the Court June 1, 2017).

12.    On April 30, 2018, Plaintiffs filed a motion to amend the complaint to add retaliation claims for the Named Plaintiffs due to Defendants' filing of the State Action complaints. (Dkt. No. 97). Such motion was denied on February 21, 2019. (Khalid Action, Dkt. No. 124 (adopting the report and recommendation of Hon. Gary R. Brown Khalid Action, Dkt. No. 122)).

4

13.     On June 26, 2018, the Court granted in part and denied in part Plaintiffs' motion for class action certification, certifying a class for Plaintiffs' spread-of-hours claims and granted Plaintiffs' motion for summary judgment for the spread-of-hours claims as well. (Khalid Action, Dkt. No. 100). On July 3, 2018, Plaintiffs filed a motion for reconsideration of the motion for class action certification and summary judgment, which Defendants opposed. (Khalid Action Dkt. Nos. 100-104, 106). On September 25, 2018, the Court amended its prior order, including class action certification of the wage notice class and extending discovery through April 29, 2019. (Khalid Action Dkt. No. 108).

14.     On October 9, 2018, Defendants filed an appeal to the Second Circuit of the Court's ruling on class certification. (Khalid Action Dkt. No. 112). The appeal was held in abeyance until the Court entered an order on the class certification motion. (Khalid Action Dkt. No. 123). On May 21, 2019, the Court entered an order certifying Plaintiffs' wage notice and spread-of-hours claims as a Rule 23 class action. (Khalid Action Dkt. No. 127). On September 24, 2019, the Second Circuit denied Defendants' petition to appeal the class certification motion. (Khalid Action Dkt. No. 129).

15.     On October 7, 2019, the stay which was in place due to the pending appeal was lifted. (Khalid Action Order of the Court October 7, 2019). On November 5, 2019, the Court granted another 30-day stay as Defendants' counsel changed firms. (Khalid Action Order of the Court November 5, 2019).

16.     On January 22, 2020, the case was reassigned to Magistrate Judge Steven I. Locke and on January 29, 2020, the case was reassigned to District Judge Gary R. Brown.

17.     On February 21, 2020, Plaintiffs filed a motion to compel production of an unredacted class list and to compel production of class discovery by Defendants. (Khalid Action

Dkt. No. 135). On February 21, 2020, Defendants filed a motion to disqualify Plaintiffs' counsel. (Khalid Action Dkt. No. 136). On March 2, 2020, Magistrate Judge Steven I. Locke denied both motions without prejudice to Defendants to file a full-blown motion. (Khalid Action Dkt. No. 141). The deadline to file such motion has been stayed in light of the instant settlement motion.

**The Torres Action**

18.     On August 30, 2017, Plaintiff Torres filed the Torres Action as a collective action under the FLSA. (Torres Action, Dkt. No. 1 (the "Torres Complaint")). On July 30, 2018, Plaintiff Torres, Krishnaba Zala ("Zala") and Sneha Vaghela ("Vaghela" and, together with Torres and Zala, the "Torres Plaintiffs") filed an amended complaint (the "Torres Amended Complaint"). (Torres Action, Dkt. No. 30). On November 22, 2019, Defendants filed an Answer disputing the material allegations and denying any liability in the proposed collective action and bringing counterclaims against Torres for breach of duty of loyalty, conversion and breach of fiduciary duty. (Torres Action, Dkt. No. 50). On December 10, 2019, Torres filed an Answer to the Counterclaims denying any liability. (Torres Action, Dkt. No. 52).

19.     On November 27, 2018, Defendants filed a motion to dismiss the amended complaint. (Dkt. Nos. 41-45). The motion was denied as to the FLSA collective claims pertaining to store managers and denied as far as the amended complaint raises issues on behalf of non-management employees (who were already represented in the Khalid Action). (Dkt. No. 48).

20.     On September 25, 2019, Zia Ghouri filed an opt-in consent to join the Torres Action. (Dkt. No. 47).

21.     On January 16, 2020, the Court adopted the parties' proposed discovery schedule. (Dkt. No. 55).

22.     On January 29, 2020, the Torres Action was reassigned to U.S. District Judge Gary R. Brown and on March 4, 2020 was reassigned to U.S. Magistrate Judge Steven I. Locke.

**The State Actions**

23.     On March 8, 2018, the State Actions were filed. (State Actions, Dkt. No. 1). On March 6, 2018, State Action Defendants filed a notice of removal to the Eastern District of New York (Shirley 1 Dkt. No. 2; Southhold Dkt. No. 2). State Action Defendants filed their Answer when the case was removed, and then the parties stipulated to remand the case back to state court. (Shirley Dkt. No. 4; Southhold Dkt. No. 4-5). On October 1, 2019, State Action Plaintiffs filed a Request for Preliminary Conference. (Shirley Dkt. No. 5; Southhold Dkt. No. 6). A Preliminary Conference was held on April 15, 2019. (Shirley Dkt. No. 5; Southhold Dkt. No. 7). A Compliance Conference was held on March 3, 2020. (Shirley Dkt. No. 9; Southhold Dkt. No. 10).

**II.     Overview of Investigation and Discovery**

24.     Before initiation of the Federal Actions and continuing throughout the litigation, Class Counsel spoke with the named plaintiffs in the Khalid Action—and later, opt-in plaintiffs, named plaintiffs in the Torres Action and class members—to determine the hours that they worked, the wages they were paid, the nature of their duties and responsibilities and other relevant information, and conducted research and investigation on the merits of Plaintiffs' claims, potential defenses, damages to which Plaintiffs would be entitled, and the propriety of proceeding as a collective and class action. (*See* Declaration of Brent E. Pelton in Support of the Motion for Final Approval ("Pelton Decl.") ¶ 16).

25.     The parties completed fact discovery in the Federal Actions. (*Id.* ¶ 17). The parties exchanged tens of thousands of pages of time and payroll data and other related employment records and exchanged formal written discovery demands and requests with Defendants. (*Id.*). The

parties also exchanged discovery requests and responses and deposed a total of sixteen (16) witnesses: the two (2) Individual Defendants, eight (8) additional witnesses for Defendants (although Defendants took three (3) depositions of their own witnesses without Class Counsel present), the three (3) named plaintiffs in the Khalid Action, two (2) opt-in Plaintiffs and former defense counsel. (*Id.*). Class Counsel also fielded regular questions from Plaintiffs and class members, performed extensive legal research and briefed several contested motions including a motion to amend the complaint (Khalid Action Dkt. No. 97), motion to compel discovery (Khalid Action Dkt. No. 45), motion to quash (Khalid Action Dkt. No. 58), motion for class action certification (Khalid Action Dkt. Nos. 64-67), motion to strike (Khalid Action Dkt. No. 62), motion for partial summary judgment (Khalid Action Dkt. Nos. 68-72), a motion for reconsideration (Khalid Action Dkt. Nos. 100-104, 106), motion to compel production of class discovery and an unredacted class list (Khalid Action Dkt. No. 135), and notices of removal of the State Court Actions (Shirley 1 Skt. No. 2; Southhold Dkt. No. 2). Class Counsel also opposed Defendants' motion to compel (Khalid Action Dkt. Nos. 56), motion to stay and petition to appeal to the Second Circuit (Khalid Action Dkt. Nos. 112-121, 123), motion to dismiss the Torres Action (Torres Action Dkt. Nos. 41-45) and motion to supplement their opposition to Plaintiffs' summary judgment motion (Khalid Action Dkt. Nos. 86). (*Id.*). Moreover, Class Counsel consulted with and hired an expert to opine on certain documents which Plaintiffs believe to be false and fraudulent. (*Id.*).

### III.    Settlement Negotiations

26.    Over the course of the litigation, the parties also engaged in informal and formal settlement negotiations, which were at all times conducted at an arm's length basis. (*Id.* ¶ 18). Plaintiffs created damages analyses using tens of thousands of pages of Defendants' records. On

December 15, 2016, Hon. Gary R. Brown held an initial settlement conference with the parties, although the matter was not settled at that time. (*Id.*).

27.    After significantly more discovery and motion practice, the parties attended a full-day mediation session before Dina Jansenson, Esq. on February 18, 2020, where the parties made substantial progress towards settlement. (*Id.* ¶ 19). After the mediation, the parties continued their settlement discussions with the assistance of Ms. Jansenson, reaching a settlement in principle of all claims in the Actions on April 3, 2020. (*Id.*). Over the next several weeks, the parties continued to negotiate the final terms and language of the settlement agreement. (*Id.*). The parties were able to agree on all but one issue regarding reversion. (*Id.*). As such, the parties submitted this issue to Ms. Jansenson to act as an arbitrator on this issue. Her final decision is reflected in the Settlement Agreement and Release (the "Settlement Agreement"). (*Id.*).

28.    The final terms of the agreement were memorialized in the formal Settlement Agreement, which attached to the Pelton Declaration as Exhibit B.

29.    At all times during the settlement negotiation process, negotiations were conducted at an arm's-length basis. (Pelton Decl. ¶ 18).

**IV.    Terms of the Settlement Agreement**

30.    The parties have agreed to settle the claims of the Named Plaintiffs, opt-in plaintiffs in the Federal Actions and all hourly employees who worked in excess of forty (40) hours in any workweek and/or worked a shift or split-shift in excess of ten (10) hours at any time from October 14, 2009 through May 21, 2019 for any Dunkin' Donuts or combination Dunkin' Donuts/Baskin Robbins/Nathan's location owned and/or operated by Sanjay Jain and/or Neerja Jain in New York (altogether "Class Members"). (Pelton Decl. Ex. B ("Settlement Agreement") ¶ 2.4). There are four hundred and ninety-four (494) Class Members as per the class lists provided by Defendants.

9

(Pelton Decl. ¶ 4). The Settlement Agreement also settles all claims alleged in the State court Actions. (*See* Pelton Decl. Ex. B).

31.     The Settlement Agreement creates a fund of $500,000.00, to settle this case (the "Settlement Fund"). (Pelton Decl. Ex. B ¶ 2.27). The Settlement Fund covers Class Members' individual settlement amounts, service awards, attorneys' fees and costs, and reasonable settlement administration fees and costs. (*Id.*).  The remaining funds (the "Net Settlement Fund") will be allocated among the Class Members. (*Id.*  ¶¶ 2.27, 4.1).

32.     All Class Members who do not timely opt-out of the Settlement will be eligible to receive a payment from the settlement. (*Id.* ¶¶ 2.19, 3.7(C)).

33.     Each Class Member will receive a portion of the Net Settlement Fund that is calculated by an allocation formula based on the Class Member's spread-of-hours damages and number of hours worked according to Defendants' payroll records, whether the individual filed a consent to sue under the FLSA and whether the individual asserted retaliation claims. (*Id.* ¶ 4.1).

34.     Class Members will have an initial ninety (90) days after their payments are mailed by the Claims Administrator or presented to them by Defendants to negotiate their respective settlement checks (the "First Distribution"). (*Id.* ¶ 4.1(F)(ii)).

35.     The Claims Administrator shall mail new settlement checks to Class Members who did not cash/redeem their Settlement Checks within the 90-day period (the "Second Distribution"). (*Id.* ¶ 4.1(F)(iii)). Class Members receiving new settlement checks in the Second Distribution will have sixty (60) days after their payments are mailed to redeem them. (*Id.* ¶ 4.1(F)(iv)).

36.     If it is not administratively feasibly to make an additional distribution of the remaining amount to Class Members, which will be presumed at $10,000 in the aggregate, then the unclaimed payments will be donated under the *cy pres* doctrine to a charitable organization. If

the remaining amount is over $10,000, then any unclaimed settlement funds not claimed/cashed after the sixty (60) day period, plus any remaining amount in the errors and omissions ("E&O") fund will be redistributed pro rata among Class Members who cashed their checks in the First Distribution or Second Distribution ("Participating Class Members"). (*Id.* ¶ 4.1(F)(v)).

37.     All Class Members who do not opt out of the Settlement within forty-five (45) days of mailing of the initial Notice of Settlement will release Defendants from all state wage claims. (*Id.* ¶¶ 3.6(A); 5.1(A)).

38.     All Named and Opt-in Plaintiffs will also release the Defendants from all federal wage claims under the FLSA. (*Id.* ¶ 5.1(C)).

39.     Upon payment of attorneys' fees, expenses and costs approved by the Court, Plaintiffs, Plaintiffs' counsel and Class Members will release Defendants for any such claims. (*Id.* ¶ 5.1(D)).

40.     The checks issued to Class Members will also contain a NYLL and a FLSA wage and hour release. (*Id.* ¶ 5.1(F)).  Finally, the Defendants and the Named Plaintiffs receiving service awards shall mutually release as to one another all claims permitted by law. (*Id.* ¶ 5.1 (E)).

41.     The parties have agreed to retain American Legal Claims Services LLC  as the claims administrator ("ALCS" or "Claims Administrator"). (*Id.* ¶ 2.2). The responsibilities of the Claims Administrator shall include, *inter alia*, preparing, printing and disseminating all Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing ("Notice") to Class Members, receiving all Notice forms from Class Members, receiving any opt-out statements or objections from Class Members, receiving Defendants' payment of the Settlement Fund, calculating the amount of each Class Member's settlement checks, mailing settlement payments to Class

Members, tax withholdings and payments, and communicating as necessary with the parties and Class Members to facilitate the settlement. (*Id.* ¶ 3.3).

## V.      Preliminary Approval of Settlement and Dissemination of the Notice

42.     On August 10, 2020, the Court preliminarily approved the parties' proposed settlement with certain modifications and authorized the issuance of the Notice to Class Members. (*See* Khalid Action, Dkt. No. 155). The parties made the required modifications to the settlement and filed the revised version of the settlement agreement, which was approved by the Court on August 18, 2020. (Khalid Action, Docket Entry Dated 08/18/2020).

43.     On September 16, 2020, ALCS mailed the Notice packages to four hundred and eighty-two (482) Class Members. (*See* Pelton Decl. ¶ 4; Ex. A (Declaration of Jeffrey Pirrung ("Pirrung Decl.")) ¶ 4)).

44.     On December 3, 2020, ALCS mailed another twelve (12) Notice Packages (only changing the deadline to opt-out/object to December 17, 2020 ("Supplemental Notice") to Class Members whom the parties identified as not having previously received the Notice. (*See* Pelton Decl. ¶ 4; Ex. A (Pirrung Decl.) ¶ 9)).

45.     The Notice and Supplemental Notice advised Class Members of applicable deadlines and other events, including the Final Approval Hearing, how Class Members could participate in the settlement, and how Class Members could obtain additional information regarding the case and settlement. (Pelton Decl. ¶ 6; Khalid Action Dkt. No. 156-4).

46.     The Notices that were returned by the USPS with an updated address were re-mailed to the updated addresses provided. (Pirrung Decl. ¶ 5). For the Notices that were returned by the USPS without a forwarding address, ALCS conducted address searches, on a weekly basis,

using a nationally recognized location service to attempt to locate new addresses for these Class Members. (Pelton Decl. ¶ 5; Pirrung Decl. ¶ 5).

47.    Of the four hundred and eighty-two (482) Notices mailed, one hundred and twenty-one (121) were returned by the USPS of which sixty-three (63) were re-mailed. (Pelton Decl. ¶ 5; Pirrung Decl. ¶ 3).  As of December 18, 2020, fifty-eight (58) Notices were deemed undeliverable. (Pelton Decl. ¶ 5; Pirrung Decl. ¶ 5). None of the twelve (12) Supplemental Notices were returned as undeliverable. (Pelton Decl. ¶ 5; Pirrung Decl. ¶ 9).

48.    The response to the Notice and Supplemental Notice has been overwhelmingly positive.  As of December 18, 2020, zero Class Members have requested to be excluded and zero Class Members objected to the settlement. (Pelton Decl. ¶ 9; Pirrung Decl. ¶¶ 7-9).

VI.    **Contributions of the Named Plaintiffs**

49.    The Named Plaintiffs were integral in initiating this class action and made significant contributions to the prosecution of the litigation. (Pelton Decl. ¶ 11).

50.    The Named Plaintiffs' services began with bringing the case and initiating the filing of the Federal Actions that were eventually resolved in the Settlement and allowed for nearly five hundred (500) current and former employees of Defendants to recover unpaid wages. (*Id.* ¶ 12).

51.    The Named Plaintiffs represented the class by providing information to Class Counsel, participating in the drafting of the complaints, providing evidence, sitting for depositions, working with Class Counsel in developing the Actions, participating in the settlement negotiations including sitting for a settlement conference and a lengthy mediation, and ultimately concluding a successful settlement for the Class. (*Id.* ¶ 13).

52.     The Named Plaintiffs also took risks that the Class Members did not. They risked their professional reputation with future employers by agreeing to initiate and join the actions. (*Id.* ¶ 14).

53.     Without the effort of the Named Plaintiffs, this case on behalf of the Class would not have been brought, and this settlement would not have been achieved. (*Id.* ¶ 15).

54.     Service awards of this type are commonly awarded in complex wage and hour litigation.

VII.    **Final Approval of Class Settlement**

55.     <u>The Court held a fairness hearing on January 4, 2021.</u>

56.     Having considered the Motion for Final Approval, the supporting declarations, the arguments presented at the fairness hearing, and the complete record in this matter, for good cause shown, the Court (i) grants final approval of the settlement memorialized in the Settlement Agreement, attached to the Pelton Decl. as Exhibit B; (ii) approves the service payments to the Named Plaintiffs in the total amount of $45,000.00; and (iii) approves an award of attorneys' fees in the amount of $158,263.28 (one-third (1/3) of the Settlement Amount after subtracting litigation costs) and reimbursement of litigation expenses in the amount of $25,210.28.

57.     Under Fed. R. Civ. P. 23(e), to grant final approval of a Settlement, the Court must determine whether the proposed settlement is "fair, reasonable and adequate." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 293 F.R.D. 459, 464 (S.D.N.Y. 2013). "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits. *Massiah v. MetroPlus Health Plan, Inc.*, No. 11–cv–05669 2012 U.S. Dist. LEXIS 166383,

14

at *5 (E.D.N.Y. Nov. 20, 2012) (quoting *Wal–Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 116 (2d Cir. 2005)). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Wal- Mart Stores*, 396 F.3d at 116 (internal quotations omitted).

58.      If the settlement was achieved through experienced counsels' arm's-length negotiations, '[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Massiah*, 2012 U.S. Dist. LEXIS 166383 at *6 (internal quotations omitted). "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *Id.* at *6 (internal quotations omitted). "The Court gives weight to the parties' judgment that the settlement is fair and reasonable." *Id.* (collecting cases).

A.      **Procedural Fairness**

59.      It is clear from the history of the case that the parties reached this settlement only after engaging in extensive investigation and discovery and vigorous litigation which allowed each side to assess the potential risks of continued litigation, and robust settlement discussions, including numerous discussions via telephone and email and a full-day mediation with an experienced mediator. The settlement was reached as a result of arm's-length negotiations between experienced, capable counsel after meaningful exchange of information and discovery.

B.      **Substantive Fairness**

60.      In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir.

1974). The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recover; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. Because "the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement," satisfaction of the *Grinnell* factor analysis will necessarily satisfy the standards of approval of the FLSA settlement. *Massiah*, 2012 U.S. Dist. LEXIS 166383 at *13. All of the *Grinnell* factors weigh in favor of granting final approval of the Settlement Agreement.

61.    Litigation through trial would be complex, expensive, and long. Therefore, the first *Grinnell* factor weighs in favor of final approval.

62.    The response to the settlement has been positive. There have been no requests for exclusion or objections to the Settlement. (Pelton Decl. ¶ 9). "The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness. *Wright v. Stern,* 553 F. Supp. 2d 337, 344-45 (S.D.N.Y.2008) (approving settlement where 13 out of 3,500 class members objected and 3 opted out); *see also Willix v. Healthfirst, Inc.,* No. 07-cv-1143, 2011 U.S. Dist. LEXIS, at *10 (E.D.N.Y. Feb. 18, 2011) (approving settlement where only 7 of 2,025 class member submitted timely objections and only 2 requested exclusion). Thus, this factor weighs strongly in favor of approval.

63.    The parties have completed enough discovery to recommend settlement.  In fact, the parties have completed formal discovery in the Federal Actions. The proper question is

"whether counsel had an adequate appreciation of the merits of the case before negotiating." *Warfarin*, 391 F.3d at 537. "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (internal quotations omitted). The parties' discovery here meets this standard. Class Counsel has interviewed several current and former employees of Defendants to gather information relevant to the claims in the Actions; obtained, reviewed, and analyzed tens of thousands of pages of documents including but not limited to time and payroll data; exchanged formal written discovery requests and responses with Defendants, deposed numerous witnesses, fielded questions from Plaintiffs and Class Members; performed extensive legal research; filed and opposed numerous motions; hired an expert; compiled and negotiated a damages analysis; attended a settlement conference and lengthy mediation session; and submitted formal position statements on an issue regarding settlement to the mediator who acted as n arbitrator. (Pelton Decl. ¶¶ 16-19).

64.    The risk of establishing liability and damages further weighs in favor of final approval. A trial on the merits would involve risks because Plaintiffs would have to defeat Defendants' arguments that, *inter alia*, the Plaintiffs were paid in accordance with the federal and state law. "Litigation inherently involves risks." *Massiah*, 2012 U.S. Dist. LEXIS 166383 at *11. The settlement alleviates this uncertainty.

65.    The risk of establishing maintaining the class status through trial is also present. Defendants would likely argue that the Rule 23 class should be de-certified and object to trial by representative testimony.   Settlement eliminates the risk, expense, and delay inherent in this process. *Massiah*, 2012 U.S. Dist. LEXIS 166383, at *12.

66.    The parties negotiated heavily over the settlement amount taking into account Defendants' ability to pay a settlement that would compensate the class for their alleged unpaid wages.  Even if the Defendants can withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (internal quotations omitted).   This factor does not hinder granting final approval.

67.    The substantial amount of the settlement weighs strongly in favor of final approval. "The determination whether a settlement is reasonable does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178).  "'Instead, "there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."' Frank, 228 F.R.D. at 186 (internal quotations omitted). Moreover, when a "settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road,' settlement is reasonable under this factor. *Massiah*, 2012 U.S. Dist. LEXIS 166383 at *13 (internal quotations omitted). The eighth and ninth Grinnell factors favor final approval.

## VIII.   Approval of the FLSA Settlement

68.    The Court hereby approves the FLSA settlement.

69.    Because "the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement," *Massiah*, 2012 U.S. Dist. LEXIS 166383 at *13, satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement.

70.     Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bone fide disputes. *See DeLeon v. Wells Fargo Bank, N.A.*, No. 12-cv-4494, 2015 U.S. Dist. LEXIS 65261, at *10. (S.D.N.Y. May 7, 2015).  Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Id.* (internal quotations omitted). If the proposed settlement reflects a reasonable compromise over contested issues, the Court should approve the settlement. *Id.*

71.     The Court finds that the FLSA settlement was the result of contested litigation and arm's-length negotiation, and that the settlement terms are fair and appropriate.

## IX.    Dissemination of Notice

72.     Pursuant to the Preliminary Approval Order, Notice was sent by first-class mail to each identified Class Member at his or her last known address (with re-mailing of returned Notices). (Pelton Decl. ¶¶ 4, 5).  The Court finds that the mailed Notice fairly and adequately advised Class Members of the terms of the settlement, as well as the right of Class Members to opt out of the class, to object to the settlement, and to appear at the fairness hearing conducted January 4, 2021.  Class Members were provided the best notice practicable under the circumstances.

73.     The Court further finds that the Notice and distribution of such Notice comported with all constitutional requirements, including those of due process.

## X.    Award of Fees and Costs to Class Counsel and Service Awards to Named Plaintiffs

74.     Class Counsel did extensive work for approximately two and one-half (2.5) years identifying, investigating, prosecuting, litigating, and settling the Named Plaintiffs' and the Class Members' claims.

75.    Class Counsel has substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and are well-versed in wage-and-hour law and in class action law.

76.    The work that Class Counsel has performed in litigating and settling this case demonstrates their commitment to the Class and to representing the Class' interests.

77.    The Court hereby awards Class Counsel $158,263.28 in attorneys' fees or one-third (1/3) of the Settlement Fund after subtracting Class Counsel's actual litigation costs.

78.    The Court finds that the amount of fees requested is fair and reasonable using the "percentage-of-recovery" method, which is consistent with the "trend in this Circuit." *See McDaniel v. Cty. Of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010); *DeLeon*, 2015 U.S. Dist. LEXIS 65261 at *13.

79.    Class Counsel's request for one-third (1/3) of the settlement amount is reasonable and "consistent with the norms of class litigation in this circuit." *See, e.g., DeLeon*, 2015 U.S. Dist. LEXIS 65261 at *13-14 (awarding 1/3 of $1,850,000.00 fund); *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05-cv-3452, 2008 U.S. Dist. LEXIS 23016, at *15 (S.D.N.Y. March 24, 2008) (awarding 1/3 of $450,000.00 common fund in wage and hour case); *In re Arotech Corp. Sec. Litig.*, No. 07-CV-1838, 2010 U.S. Dist. LEXIS 55570, 2010 WL 2301195, at *7 (E.D.N.Y. June 7, 2010) ("33% of the common fun is considered routine and therefore reasonable . . . ."). Class Counsel's attorneys' fees request of thirty-three percent (33%) is in line with decisions in this Circuit which have routinely awarded between thirty and thirty-three percent (30-33%) of the settlement fund as attorneys' fees in wage and hour cases. *See, e.g., Thornhill v. CVS Pharmacy, Inc.*, No. 13-cv-5507, 2014 U.S. Dist LEXIS 37007, at *7-8 (S.D.N.Y. March 20, 2014) (noting that, "[i]n this Circuit, courts typically approve attorneys' fees that range between 30 and 33

percent" and citing cases) (quoting *Guzman v. Joesons Auto Parts*, No. 11-cv-4543, 2013 U.S. Dist. LEXIS 83342 at *4 (E.D.N.Y. June 13, 2013) (collecting cases)).

80.     Class Counsel risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation. A percentage-of-recovery fee award of one-third (1/3) of the settlement amount is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 493 F.3d 110, 111–12 (2d Cir. 2007), *amended on other grounds by* 522 F.3d 182 (2d Cir. 2008), where the Court held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay. While *Arbor Hill* is not controlling here because it does not address a common fund fee petition, it supports a one-third (1/3) recovery in a case like this one where Class Counsel's fee entitlement is entirely contingent upon success.

81.     Even evaluating the attorneys' fees requested by Class Counsel under the "lodestar method," the request for $158,263.28 is also reasonable under the *Golderberger* factors. *See Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

82.     The attorney and paralegal hourly billing rates ranging from $125 per hour for paralegals to $450 per hour for senior partners are within the range awarded in wage and hour cases in this district. *See Guinea v. Garrido Food Corp.*, No. 19-CV-5860 (BMC), 2020 U.S. Dist. LEXIS 5476, at *4-5 (E.D.N.Y. Jan. 11, 2020) (Providing that rates of "$350-$450 per hour for partner time, $250-$300 per hour for associate time, and $125-$175 per hour for paralegal time…are reasonable and consistent with rates allowed in this district."); *Hall v. Prosource Techs., LLC*, No. 14-cv-2502 (SIL), 2016 U.S. Dist. LEXIS 53791, at *41-44 (E.D.N.Y. April 11, 2016) (approving similar rates).

83.     The attorneys' fee award represents a 0.68 "negative" multiplier of Class Counsel's stated lodestar, which is reasonable in light of the *Goldberger* factors (discussed at length in the Plaintiffs' Memorandum of Law in Support of their Motion for Final Approval), and is in line with other cases in the Second Circuit. *See, e.g., Kemp-Delisser v. St. Francis Hosp. & Med. Ctr.*, No. 15-cv-1113, 2016 U.S. Dist. LEXIS 152496, at *15 (D. Conn. Nov. 3, 2016) (approving a multiplier of 2.77 as "well within the range of lodestar multipliers that are regularly approved by district courts in the Second Circuit"); *see also In re Platinum & Palladium Commodities Litig.*, No. 10-cv-3617, 2015 U.S. Dist. LEXIS 98691, at *11 (S.D.N.Y. July 7, 2015) ("Courts applying the lodestar method generally apply a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved.").

84.     The Court also awards Class Counsel reimbursement of their litigation expenses in the amount of $25,210.15, which is to be paid from the settlement amount.

85.     The attorneys' fees awarded and expenses reimbursed, shall be paid from the Settlement Fund.

86.     The Court finds reasonable service awards to the Named Plaintiffs in the total amount of $45,000.00, ten thousand dollars ($10,000) each to Sheraz Khalid, Mohammed Saleh and Alexander Torres, and five thousand dollars ($5,000) each to Suresh Patel, Krishnaba Zala and Sneha Vaghela. This amount shall be paid from the settlement. Such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs. *See DeLeon*, 2015 U.S. Dist. LEXIS 65261, at *15 (approving $15,000 service award); *Toure v. Amerigroup Corp.*, No. 10-cv-5391, 2012 U.S. Dist. LEXIS 110300, at *16 (E.D.N.Y. Aug. 6, 2012) (approving service awards

of $10,000 and $5,000); *Reyes v. Altamarea Group,* No. 10-cv-6451, 2011 U.S. Dist. LEXIS 115984, at *24 (S.D.N.Y. Aug. 16, 2011) (approving service awards of $15,000 to three class representatives and $5,000 to fourth class representative in restaurant case challenging tip and minimum wage policies); *see also Roberts v. Texaco, Inc.,* 979 F. Supp. 185, 200–01 (S.D.N.Y. 1997) ("The guiding standard in determining an incentive award is broadly stated as being the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claims, and, of course, the ultimate recovery").

87.    Finally, the Court finds the Settlement Administrator fees of approximately $10,099.00 reasonable. Without the Settlement Administrators, Class Members would not receive their share of the settlement proceeds. The Settlement Administrator's work will include calculating the Class Member's tax withholdings and final allocation, maintaining the settlement fund, processing the settlement payments and communicating with Class Members regarding their payments. The Settlement Administrator has additional work to complete the administration. Courts regularly award administrative costs associated with providing notice to the class. *See Bickerton*, 2013 N.Y. Misc. LEXIS 2762 at *13 (awarding administration fees); *Lopez*, 2015 N.Y. Misc. LEXIS 3657, at *11 (approving administration fees "given the extensive work that has been and will continue to be done in administering the settlement"). The Settlement Administrator's fee should be paid from the Settlement Fund.

## XI.    Conclusion and Dismissal

88.    The Court approves the terms and conditions of the Settlement Agreement.

89.    The parties shall proceed with the administration of the settlement in accordance with the terms of the Settlement Agreement.

90.    The Actions are dismissed on the merits and with prejudice, with each side to bear its own attorneys' fees and costs except as set forth in the Settlement Agreement. This Final Order and Judgment shall bind, and have res judicata effect with respect to all Rule 23 Class Members.

91.    The Court approves and incorporates herein by reference the releases and waivers set forth in the Settlement Agreement which shall be binding upon the Class Members as set forth in such agreement.

92.    Neither this Order, Settlement Agreement, nor any other documents or information relating to the settlement of this action shall constitute, be construed to be, or be admissible in any proceeding as evidence (a) that any group of similarly situated or other employees exists to maintain a collective action under the FLSA, or a class action under Rule 23 of the Federal Rules of Civil Procedure or comparable state law or rules, (b) that any party has prevailed in this case, or (c) that the Defendants or others have engaged in any wrongdoing.

93.    Without affecting the finality of this Final Order, the Court will retain jurisdiction over the case following the entry of the Judgment and Dismissal until 30 days after the end of the time for class members to cash their settlement check has expired, as defined in the Settlement Agreement.  The parties shall abide by all terms of the Settlement Agreement and this Order.

94.    This document shall constitute a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure.


It is so ORDERED this   4th   day of  January , 2021.

The Clerk of the Court is directed to close the two cases.
So Ordered by Magistrate Judge Steven I. Locke on 1/4/2021

/s/ STEVEN I. LOCKE

_____

Honorable Steven I. Locke
United States Magistrate Judge